UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY TODD HARRIS,

            Plaintiff,                          Civil Action No. 10-cv-13410

        v.                              District Judge Paul D. Borman
                                          Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14 , 17 ]**

       Plaintiff Jeffrey Todd Harris ("Plaintiff" or "Claimant") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties filed summary judgment motions (Dkts. 14, 17) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkts. 3, 16.)

**I. RECOMMENDATION**

       For the reasons set forth below, this Court finds the Administrative Law Judge ("ALJ") did not properly follow the mandates of SSR 96-2p and SSR 96-8p. Moreover, substantial evidence does not support the ALJ's decision to discount Plaintiff's statements regarding his pain. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Motion for Summary Judgment be DENIED and, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be REMANDED. Lastly, this Court

recommends that, upon remand, the ALJ consider the additional evidence regarding physical impairments submitted to the Appeals Council.

## II. REPORT

### A. Procedural History

Plaintiff alleges that he became unable to work on March 13, 2006.  (Tr. 12.)   The Commissioner denied Plaintiff's disability application on October 30, 2006. (Tr. 45-50.)  Plaintiff then filed a request for a hearing, and on May 28, 2008, Plaintiff appeared with counsel before ALJ Paul R. Armstrong who considered the case *de novo*.  (Tr. 20-44.)  In a July 22, 2008 decision, the ALJ found that Plaintiff was not disabled.  (Tr. 7-19.)  After the ALJ's decision, Plaintiff submitted additional records to the Appeals Council that both pre- and post-date the ALJ's decision.  (Tr. 818-95.)  The ALJ's decision became the final decision of the Commissioner on June 29, 2010 when the Appeals Council denied Plaintiff's request for review.  (Tr. 1.)  Plaintiff filed this suit on August 16, 2010.

### B. Background

Plaintiff was 43 years old at the time of the ALJ's decision. (Tr. 18.)  He has a high school education and past relevant work as an airline baggage handler for 22-years. (Tr. 39.)  Plaintiff's severe impairments include: degenerative disc disease of the cervical spine, cervical radiculopathy status post-surgery, depression, and anxiety. (Tr. 12.)

#### 1. *Plaintiff's Testimony*

At the hearing before the ALJ, Plaintiff recounted symptoms and limitations related to his physical and mental problems. (Tr. 25-44.)  The ALJ opened the questioning by asking: "Now,

2

what's wrong with your back, sir?  We've got a couple of MRIs that says perfectly normal [sic]."[1]
(Tr. 25.)  Plaintiff went on to testify that his back was not perfectly normal, and he is "in severe pain

constantly."  (Tr. 27.)  He also stated that his neck feels like he has a "crick" in it all the time, and

he does not sleep well.  (Tr. 27.)  He testified that physical therapy does not help.  (Tr. 27.)

Regarding his mental impairments, Plaintiff testified that he suffered from anxiety since

1995.  (Tr. 28.)  He testified that Xanax helps but makes him sleepy.  (Tr. 28.)

Plaintiff also testified regarding his back surgery in July 2007.  (Tr. 33.)  At that time, he

received two artificial discs.  (Tr. 33.)  The surgery was unsuccessful, however, in that it did not

relieve his pain.  (Tr. 34.)

### 2.  Relevant Medical Evidence

On March 13, 2006, Plaintiff went to the emergency room at St. Mary's Hospital in Livonia,

Michigan complaining of neck pain.  (Tr. 201.)  Plaintiff had a CT performed at that time.  (Tr. 182-

83; 201.)  The CT showed narrowing at C3-4 from spurring and degenerative changes, and disc

protrusion/herniation at C5-6.  (Tr. 183.)

Subsequently, on or about April of 2006, Plaintiff saw Dr. Middeldorf, a physical medicine

and rehabilitation doctor.  (Tr. 161-85.)  Plaintiff told Dr. Middeldorf that he was involved in an

accident loading a plane on January 6, 2006.  (Tr. 162.)  He complained of pain in the neck area and

"left trapezius area."  (Tr. 162.)  Dr. Middeldorf performed a physical examination and found "no

palpable spasms or trigger points."  (Tr. 163.)  However, Dr. Middeldorf noted that Plaintiff "does

have decreased sensation to light touch down the left arm into the left thumb and index finger,

---

[1]  Notably, the MRIs in the file are <u>not </u>normal, but, rather, show mild to minimal disc
bulging or herniation, a "foraminal narrowing," disc disease, and spondylosis.  (Tr. 172, 176-77,
185.)

suggestive of radiculopathy." (Tr. 163.) In addition, x-rays showed "mild degenerative changes [in] C3-C4, C5-C6" and "fairly severe foraminal narrowing on the left at C3-C4." (Tr. 163 .) He diagnosed Plaintiff with "[r]adicular pain left upper extremity with foraminal narrowing C3-C4." (Tr. 163.) Dr. Middeldorf also performed an electromyographic examination on Plaintiff. (TR. 167.) The examination showed "mild subacute left C6 radiculopathy." (Tr. 171.)

On May 2, 2006, Plaintiff met with Dr. Martin B. Kornblum, an orthopedic spine surgeon with Mendelson Orthopedics, P.C. (Tr. 174.) Dr. Kornblum indicated that a previous CAT scan showed evidence of "left-sided disc protrusion at C3-4 and . . . C5-6." (Tr. 174.) Dr. Kornblum diagnosed Plaintiff with cervical and lumbar radiculopathy. (Tr. 175.) Dr. Kornblum indicated that the "patient is not doing well." (Tr. 175.) He ordered an MRI of both areas, and considered the possibility of physical therapy and injections upon receiving the MRI results. (Tr. 175.) The subsequent MRI was performed on May 13, 2006. (Tr. 176-77.)

Plaintiff returned to see Dr. Kornblum on May 25, 2006. Dr. Kornblum indicated that:

> The MRI of his lumbar spine does not show much pathology. MRI of his neck is pretty reasonable except where there is one area where he definitely has a problem. It is on the left at C3-4. It is definitely herniation. *It is definitely causing some lateral recess neuroforaminal type narrowing.* C5-6 shows a small disc protrusion, but I do not think that is going to be clinically significant. The one at C3-4 is much larger.

(Tr. 185 (emphasis added).) Dr. Kornblum indicated that he "would like to try getting him better without surgery." (Tr. 185.) He recommended physical therapy and injections. (Tr. 185.)

On June 20, 2006, Plaintiff saw Dr. Arunachalam, his primary care physician, at Oakwood Hospital. (Tr. 153.) He told Dr. Arunachalam that he wanted to see a psychiatrist for depression. (Tr. 153.) The records of this visit indicate that Plaintiff was depressed because Northwest was not

4

willing to pay him workers' compensation for the injury he suffered on January 6, 2006. (Tr. 153.) Dr. Arunachalam told Plaintiff to call the phone number on the back of his insurance card to get a reference to a psychiatrist. (Tr. 155.)

On August 10, 2006, Plaintiff followed-up with Dr. Arunachalam, and told him that his anxiety was stable and things were improving at home. (Tr. 157.) At that time, he had not called a psychiatrist. (Tr. 157.)

Plaintiff saw Dr. Washabaugh of the Michigan Pain Specialists on August 23, 2006. (Tr. 172.) Dr. Washabaugh noted that Plaintiff "has pain in his neck which is primary and then it radiates down his arm with some numbness and pain in his low back which will radiate into his left leg." (Tr. 172.) Plaintiff told Dr. Washabaugh that he had "traction and massage without relief." (Tr. 172.) He did have some relief from the TENS unit in physical therapy, but it was only temporary. (Tr. 172.) Dr. Washabaugh related that MRI scans showed C4/5 and C5/6 disc disease with spondylosis. He diagnosed Plaintiff with a sprain. (Tr. 172.) Dr. Washabaugh recommended a "cervical epidural steroid injection" and Valium. (Tr. 173.) On September 6, 2006, Dr. Washabaugh gave Plaintiff a steroid injection. (Tr. 179-80.)

On October 27, 2006, Leonard C. Balunas, Ph.D. completed a Psychiatric Review Technique form for Plaintiff. (Tr. 224- 37). He indicated that Plaintiff's mental impairments were not severe. (Tr. 224.) Dr. Balunas indicated that Plaintiff suffered from depression and anxiety. (Tr. 227, 229.) With regard to the "B" Criteria,[2] Dr. Balunas indicated that Plaintiff had mild restrictions in activities of daily living, and in maintaining concentration, persistence or pace. (Tr. 234.)

---

[2] "B" criteria indicates certain functional limitations found in paragraph B of some of the listings for mental impairments. 20 C.F.R § 404 App'x 1 to Subpart P.

In addition, on October 30, 2006, Medical Consultant Rochelle Baron-Wong completed a Physical Residual Functional Capacity Assessment on Plaintiff for the DDS state agency. (Tr. 238-45.) Baron-Wong, a non-examining consultant, indicated that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 239.) She also indicated that he could stand, walk and/or sit for 6 hours of an 8-hour work day. (Tr. 239.) She also noted that Plaintiff's activities of daily living included caring for his children, cooking, cleaning, driving, shopping, handling finances, and attending church. (Tr. 243.)

On May 29, 2007, Plaintiff saw Dr. Kornblum again regarding his neck and back pain. (Tr. 251.) Dr. Kornblum decided that surgery would be appropriate, and explained the "risks and complications" attendant with spine surgery. (Tr. 251.)

Plaintiff then saw Dr. Kornblum on July 3, 2007, and indicated that he received his preoperative clearance. (Tr. 252.) Due to Plaintiff's continued pain, Dr. Kornblum increased his Vicodin, and gave him Medrol and Dosepak for "acute exacerbation." (Tr. 252.) Dr. Kornblum scheduled surgery for the following week. (Tr. 252.)

Plaintiff had surgery on July 12, 2007. (Tr. 260.) He did not, however, submit his operative or post-operative reports prior to the ALJ's decision on July 22, 2008.

In a physical Medical Source Statement of Ability to Do Work-Related Activities, Dr. Kornblum indicated that Plaintiff was totally disabled as of July 13, 2007, the day after his surgery. (Tr. 254-57.) Dr. Kornblum indicated that Plaintiff could not lift and/or carry any weight, and limited Plaintiff's standing, walking, pushing, and certain postural activities. (Tr. 254-57.) He indicated that he would re-evaluate on July 31, 2007. (Tr.254-57.)

On October 16, 2007, Dr. Kornblum indicated that Plaintiff was permanently disabled

6

without any expected date for improvement in his status.  (Tr. 259.)  In an Attending Physician

Statement, Dr. Kornblum again indicated that Plaintiff was permanently disabled.  (Tr. 260.)

On November 2, 2007, Dr. Sara Dumas completed a mental Medical Source Statement of

Ability to Do Work-Related Activities for Plaintiff.  (Tr. 247-49.)  She indicated that Plaintiff has

a "history of extreme anger outbursts." (Tr. 248.)  She indicated that Plaintiff's ability to understand

and carry out instructions was not affected by his mental impairments, but that he had marked

restrictions in interacting appropriately with the public, supervisors, and co-workers.  (Tr. 248.)

### 3. Vocational Expert's Testimony

Vocational Expert ("VE") James Breen testified at the hearing.  The ALJ asked the VE to

assume the following hypothetical individual: an individual limited to light work[3] with no overhead

work, and no work at unprotected heights, around dangerous moving machinery, or open flames or

bodies of water.  (Tr. 39.)

The VE testified that such a person could not perform Plaintiff's past work as a baggage

handler.  (Tr. 39.)  The VE testified that such a person could perform a "wide range of unskilled,

light work." (Tr. 39.)  Indeed, the VE testified that such a person could work as a cashier, fast food

worker, and housekeeper, and that there would be 75,000, 40,000 and 13,500 of such jobs available

in the Detroit region, respectively.  (Tr. 63.)

The ALJ then asked the VE if these jobs would be available for such a person if he could not

sit for more than 15 minutes; could not stand for more than 15 minutes; could not do repetitive work;

and had to lie down two or three times a day for at least a half hour during the workday.  (Tr. 40-42.)

---

[3] Light work includes the ability to lift 20 pounds at a time and walking, off and on, for a total of approximately 6 hours of an 8-hour day.  *Vinson v. Astrue*, No. 1:07-CV-213, 2008 WL 4442504, at *3 (E.D. Tenn. Sept. 24, 2008).

The VE testified that these jobs would not be available for such a person.  (Tr. 42.)

### C.  Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

8

Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.  The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 13, 2006—Plaintiff's alleged onset date.  (Tr. 12.)  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; cervical radiculopathy status post-surgery; depression and anxiety (non-severe).  (Tr. 12.)  Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment.  (Tr. 12.)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with no overhead work bilaterally, and no working at unprotected heights or around dangerous moving machinery, open flames and bodies of water.  (Tr. 13.)  At step four, the ALJ found that Plaintiff could not perform any past relevant work.  (Tr. 18.)  At step five, the ALJ relied on VE testimony in response to his hypothetical, and found that work existed in significant numbers in the Michigan economy that Plaintiff could perform: 75,000 cashier positions, 40,000 food worker positions, and 13,500 housekeeper positions.  (Tr. 19.)

### E.  Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence

in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)).   Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).   In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if

10

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

### F. Analysis

#### 1. The ALJ Did Not Give Appropriate Weight to Dr. Kornblum, Plaintiff's Treating Physician

Generally, greater deference is given to the opinions of a treating physician than to those of a non-treating physician; this is commonly known as the treating physician rule. *See* SSR 96-2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).[4] "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). Moreover, 20 C.F.R. § 404.1527(d)(2) "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544. In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

---

[4]The rational behind this rule is that:

> [treating physicians] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a [claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2).

11

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).[5] An ALJ's failure to comply with the procedural, explanatory component of the treating physician rule is typically not harmless error.[6]

The Sixth Circuit has, however, indicated that there are certain, narrow exceptions to the notion that a violation of the procedural aspect of the treating physician rule is not harmless error. The three narrow exceptions are: 1) If a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; 2) If the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; and 3) If the Commissioner has met the goal of § 1527(d)(2)—even though he has not complied with the terms of the regulation. *Wilson*, 378 F.3d at 547.

Thus, the Court will consider, in turn, whether (1) Dr. Kornblum's opinion was "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not

---

[5]This procedural requirement is justified on two grounds. First, the explanation "lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Second, the explanatory requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

[6]"A court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.'" *Wilson*, 378 F.3d at 546. Restated, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

inconsistent with the other substantial evidence of the record," *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. 404.1527(d)(2)); and (2) The ALJ has otherwise satisfied the purposes behind the explanatory safeguard via the *Wilson* exceptions.

Relative to the Plaintiff's physical impairments, the ALJ states: "the undersigned has considered the statements of July 13, 2007, October 19, 2007, and May 1, 2008 from the claimant's treating orthopedist Martin Kornblum, M.D., who stated that the claimant was permanently disabled." (Tr. 17.) The ALJ further concludes:

> The opinions expressed by Dr. Kornblum are quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. As such the undersigned has given little weight to his opinions as the evidence of record does not support Dr. Kornblum's conclusions.

(Tr. 17.)

Curiously, the ALJ only analyzed the last three statements submitted by Dr. Kornblum prior to the hearing on this matter in determining whether Dr. Kornblum's opinion deserved controlling weight. (Tr. 17.) However, the evidence reveals that other more substantial records exist from Dr. Kornblum that provide detailed analysis of objective medical evidence such as CAT scans and MRIs. (Tr. 174-85, 251-52, 259-60.) First, as indicated above, on May 2, 2006, Dr. Kornblum indicated that a previous CAT scan showed evidence of "left-sided disc protrusion at C3-4 and . . . C5-6." (Tr. 174.) Second, Plaintiff returned to see Dr. Kornblum on May 25, 2006. Dr. Kornblum indicated that:

> The MRI of his lumbar spine does not show much pathology. MRI of his neck is pretty reasonable except where there is one area where he definitely has a problem. It is on the left at C3-4. It is definitely herniation. ***It is definitely causing some lateral recess neuroforaminal type narrowing.*** C5-6 shows a small disc protrusion, but I do not think that is going to be clinically significant.

13

The one at C3-4 is much larger.

(Tr. 185.) (emphasis added.)

Moreover, these opinions were not inconsistent with the opinions of Dr. Middeldorf, who found Plaintiff suffered from "mild degenerative changes [in] C3-C4, C5-C6" and "fairly severe foraminal narrowing," or Dr. Washabaugh, who found Plaintiff suffered from disc disease and Spondylosis. (Tr. 163, 172.)

Although the ALJ discusses these records in his formation of his RFC (Tr. 15-17), he does not discuss them at all when he determines that Dr. Kornblum's opinions are not entitled to controlling weight. The Court finds this to be a violation of the treating physician rule. *Wilson*, 378 F.3d at 544.

In addition, the ALJ has not otherwise satisfied the purposes behind the explanatory safeguard via the *Wilson* exceptions. As discussed, Dr. Kornblum's opinion is supported by objective medical evidence and the Court does not find it patently deficient. (Tr. 17.) In addition, the ALJ did not make findings consistent with Dr. Kornblum's opinions regarding the severity of Plaintiff's back and neck impairments. (Tr. 15-17.) Lastly, the ALJ's decision does not otherwise reveal why the ALJ decided to only look at Dr. Kornblum's records regarding the ultimate issue rather than all of Dr. Kornblum's records. (Tr. 17.) Therefore, the ALJ committed legal error.

This error extended to the ALJ's analysis of Plaintiff's RFC as well. (Pl.'s Mot. Summ. J. at 6-8.) The ALJ's RFC assessment of Plaintiff limited him to light work with no overhead work, and no work at unprotected heights, around dangerous moving machinery, or over open flames or bodies of water. (Tr. 39.)

SSR 96-8p provides that an "RFC assessment must be based on all of the relevant evidence

14

in the case record," which includes "medical history," "medical source statements" and "[e]ffects of symptoms . . . that are reasonably attributed to a medically determinable impairment." 1996 WL 374184, at *5. In assessing an RFC, an ALJ "must consider limitations and restrictions imposed by all the individual's impairments, even those that are not 'severe.'" *Id*. In addition, SSR 96-8p also provides that the ALJ's RFC assessment must be transparent to the reviewing court. *Id*.

The ALJ correctly noted that Dr. Kornblum's opinion that Plaintiff was permanently disabled was an issue ultimately reserved to the Commissioner per the regulations. 20 C.F.R. § 404.1527(e)(1). However, as indicated above, the ALJ did not properly weigh Dr. Kornblum's opinions separate from the ultimate issue of disability. (Tr. 17.) Specifically with regard to his RFC, the ALJ did not properly weigh Dr. Kornblum's opinion, pursuant to SSR 96-8p, that Plaintiff could not lift and/or carry any weight, or that Plaintiff had limitations on standing, walking, pushing and certain postural activities. (Tr. 254-57.) As such, the ALJ did not follow the mandates of SSR 96-8.

### 2. *The ALJ Did Not Properly Evaluate Plaintiff's Testimony Regarding His Pain*

In his brief, Plaintiff contends that the ALJ erred in stating that Plaintiff's allegations regarding his limitations are not fully credible. (Pl.'s Mot. Summ. J. at 7.) Specifically, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 14.)

15

The ALJ then went on to summarize the medical records supporting Plaintiff's claims.  (Tr. 14-18.)  However, the Social Security Administration ("SSA") has enunciated guidelines that require the ALJ to look further when analyzing a Plaintiff's subjective complaints of pain.  20 C.F.R. § 404.1529; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).  Pursuant to the SSA regulations, the ALJ must also analyze: 1) The Plaintiff's daily activities; 2) The location, duration, frequency and intensity of pain; 3) Precipitating and aggravating factors; 4) The type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, Plaintiff receives or received for relief of pain; and 6) Any measures Plaintiff uses or has used to relive pain.  20 C.F.R. § 404.1529(c)(2); *Felisky*, 35 F.3d, at 1039-40.

Applying 20 C.F.R. § 404.1529(c)(2) to this case, the Court finds substantial evidence does not exist to support the ALJ's decision to discount Plaintiff's credibility.  Indeed, the only factor that supports discounting Plaintiff's credibility is the first factor regarding daily activities.  It is undisputed that Plaintiff was able to cook, iron, clean, do laundry, shop, take care of his children and attend church at the time of the hearing.  (Tr. 14.)  However, all the other factors support Plaintiff's testimony.

With regard to the location, duration, frequency and duration of Plaintiff's pain, Plaintiff testified at the hearing that he is "in severe pain constantly.  It's like I have a crick in my neck all the time.  I don't sleep very well."  (Tr. 27.)  This testimony is consistent with the information Plaintiff provided his doctors.  First, he presented at St. Mary's Hospital complaining of neck pain.  (Tr.201.)  He continued to complain of pain in the neck area and "left trapezius area" when he saw Dr. Middeldorf.  (Tr. 162.)  In addition, he told Dr. Washabaugh that he had "pain in his neck which

16

is primary and then it radiates down his arm with some numbness and pain in his low back which will radiate into his left leg." (Tr. 172.) Furthermore, Dr. Kornblum treated him for "acute exacerbation" of his pain just prior to his surgery. (Tr. 252.)

Plaintiff did not testify to any specific, significant precipitating and aggravating factors for his pain.

With regard to medication, at the time of the hearing, Plaintiff had been on several different medications for his pain including, and not limited to, Valium, Vicodin, Medrol, Dosepak, Darvocet, Norflex, and Toradol. (Tr.173, 252, 27.) Clearly this is not a case of a claimant making allegations of disabling pain, but taking nothing but relatively weak over-the-counter pain medicine. Plaintiff was on heavy prescription medication for his pain. (Tr. 173, 252, 27.)

With regard to treatment other than medication, Plaintiff tried physical therapy, steroid injections, traction, massage, a TENS unit, and surgery. (Tr. 175, 172-80, 260.) All of these measures were unsuccessful. In addition, the Court notes that the Plaintiff was well aware of the risks and complications attendant to back surgery, and decided to have it anyway. (Tr. 251.) This behavior is indicative of someone in severe pain, rather than someone who would "escape to the disability rolls" upon the occurrence of a work accident. *See Felisky*, 35 F.3d at 1035.

Plaintiff did not testify to any measures he used, on his own, to relieve his pain.

Another factor supporting Plaintiff's credibility is his work history with Northwest. (Tr. 30.) *See Felisky*, 35 F.3d, at 1041. Plaintiff's long, 22-year, work history as a baggage handler – an arguably strenuous job – is not indicative of someone attempting to avoid work. *See Felisky*, 35 F.3d at 1035, 1041 ( noting that Plaintiff's long, 17 year, work history supported her credibility).

As noted above, at the end of Plaintiff's hearing, the ALJ asked the VE if jobs would be

available for Plaintiff if he could not sit for more than 15 minutes; could not stand for more than 15 minutes; could not do repetitive work; and had to lie down two or three times a day for at least a half hour during the workday. (Tr. 40-42.) The VE testified Plaintiff could not perform the jobs she had previously specified. (Tr. 42.) She did not specifically testify to whether Plaintiff could perform any jobs. (Tr. 42.) Therefore, even though this Court finds that substantial evidence does not support the ALJ's decision to discount Plaintiff's credibility as to his pain, this Court cannot make a finding as to the ultimate issue of disability. *Felisky*, 35 F.3d at 1041. As such, this Court recommends remand for a determination of whether Plaintiff possesses the residual functional capacity to perform any substantial gainful activity.

### 3. The ALJ Properly Evaluated Plaintiff's Testimony Regarding His Mental Impairments

Regarding an individual's credibility, SSR 96-7p states:

> [T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding of credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." (citation omitted.)

Moreover, SSR 96-7p contains a procedural requirement that requires the ALJ's decision to list "specific reasons" for his credibility determination in his decision:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

The ALJ gave a very explicit reason for discounting Plaintiff's testimony regarding his

18

mental impairments: "The claimant testified at the hearing that he has had anxiety problems since approximately 1995 but had been able to work despite it."  (Tr. 14.)  This reason is grounded in substantial evidence, referenced above, and is reasonable given the scarce evidence regarding Plaintiff's mental impairments submitted to the ALJ at the time he wrote his decision.

### 4.  Evidence Submitted to the Appeals Council

Along with his request for an Appeals Council Review on July 22, 2008, Plaintiff submitted additional medical records.  (Tr. 818-95.)  These records span from September 11, 1997 to February 20, 2009.  (Tr. 818-95.)  Although Plaintiff's Motion for Summary Judgment requests a sentence four remand, Defendant seems to construe Plaintiff's submission of these records as a request for a sentence six remand.  (Def. Mot. Summ. J. at 9.)

The fourth sentence of 42 U.S.C. § 405(g) states: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing."  This type of remand is a final judgment which terminates the district court's jurisdiction.  *Melkonyan v. Sullivan*, 509 U.S. 292, 299 (1993).

The sixth sentence of 42 U.S.C. § 405(g) states a court may remand "upon a showing that there is new evidence which is material, and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  This type of remand is not a final judgment, but, rather the district court retains jurisdiction and enters a final judgment only "after postremand agency proceedings have been completed and their results filed with the court."  *Melkonyan*, 509 U.S. at 98.

Notably, a sentence six remand is only appropriate upon a showing that the additional

19

2:10-cv-13410-PDB-LJM   Doc # 18   Filed 06/14/11   Pg 20 of 23   Pg ID 1012

evidence is new and material, and good cause exists for not presenting the evidence earlier. 42 U.S.C. § 405(g). Here, only the record from Dr. Mahr is new. (Tr. 818-95.) Moreover, there is no showing that the record from Dr. Mahr was material to the time period at issue in this case, which is from Plaintiff's alleged onset date of March 13, 2006 through July 23, 2008 – the alleged onset date for his subsequent disability application.[7] (Pl.'s Mot. Summ. J. at 8.) Dr. Mahr's record is dated February 20, 2009, and does not addresses Plaintiff's condition prior to January 19, 2009. (Tr. 888-89.) Therefore, a sentence six remand is inappropriate.

However, as discussed above, the ALJ's decision is flawed for the following reasons: 1) The ALJ did not properly follow the mandates of SSR 96-2p and *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) with regard to the treating physician rule; 2) The ALJ did not articulate a proper RFC according to SSR 96-8p; and 3) Substantial evidence does not support the ALJ's decision to discount Plaintiff's statements regarding his pain. Therefore, the issue becomes whether or not the ALJ is allowed to consider the additional evidence submitted to the Appeals Council on a sentence four remand – namely, the additional records pertaining to treatment by Dr. Kornblum and the doctors he referred the Plaintiff to for additional evaluation and treatment. (Tr. 870-87; 890-95.)

In *Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171 (6th Cir. 1994), the Sixth Circuit held that a court may order the review of additional evidence on a sentence four remand. *Id.* at 175. In *Faucher*, the plaintiff requested a remand under both sentence four and sentence six.

_____

[7] Plaintiff filed a new application for disability benefits shortly after the denial by the Appeals Council in this case. (Pl.'s Mot. Summ. J. at 1.) That application was approved on April 5, 2009. (Pl.'s Mot. Summ J. at 8.) The Social Security Administration determined that Plaintiff became disabled on July 23, 2008. (*Id.*)

20

*Id*. at 172-73.  The district court found that plaintiff had not met the requirements of a sentence six remand, but awarded benefits based on plaintiff's sentence four request.  *Id*. at 173.  On appeal, the Sixth Circuit reversed and remanded for proceedings under sentence four.  *Id*. at 176.  In doing so, the Court held that the ALJ could consider the additional evidence, even though plaintiff had not met the requirements for a sentence six remand.  *Id*. at 175.  The Court reasoned as follows:

> [R]emands under both sentence four and sentence six of 405(g) can involve the taking of additional evidence.  Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available. Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.

*Id*. at 175.

The Court is recommending remand in light of the ALJ's failure to properly consider certain records and opinions of treating physician Dr. Kornblum.  The ALJ's analysis would seem to be aided, without significant burden, by considering the additional records of Dr. Kornblum that have now been provided by Plaintiff.  Therefore, this Court recommends that, upon remand, the ALJ may consider the additional evidence submitted to the Appeals Council pertaining to Plaintiff's physical impairments.

### G.  Conclusion

For the reasons set forth below, this Court finds the Administrative Law Judge ("ALJ") did not properly follow the mandates of SSR 96-2p and SSR 96-8p.  Moreover, substantial evidence does not support the ALJ's decision to discount Plaintiff's statements regarding his pain. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be

GRANTED, and that Defendant's Motion for Summary Judgment be DENIED.  Pursuant to sentence four of 42 U.S.C. § 405(g), this Court also recommends that the decision of the Commissioner be REMANDED.  Lastly, this Court recommends that the ALJ consider the additional evidence submitted regarding Plaintiff's physical impairments to the Appeals Council upon remand.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson_____
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  June 14, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Report and Recommendation was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 14, 2011.

s/Jane Johnson_____
Deputy Clerk